IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) 8:08CR250 ) ) |
| v. | ) ) SENTENCING MEMORANDUM |
| JEREMY S. NOE, a/k/a JEREMY S. BENNETT-NOE, | ) ) ) |
| Defendant. | ) ) |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on September 25, 2009.

**I.  FACTS**

The defendant was charged in Count I of the Indictment with knowingly receiving and distributing visual depictions and attempting to receive depictions of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252A(a)(2); in Count II with knowingly possessing computer files containing an image of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B); and in Count III with forfeiture of the property used in Counts I and II in violation of 18 U.S. C. § 2253. Filing No. 1, Indictment. An order of forfeiture was entered on March 31, 2009. The defendant was convicted after a jury trial on Counts I and II.[1] Filing No. 45, Jury Verdict.

At trial, Noe presented a defense that he had not intended to possess illegal child pornography, but instead intended to possess "anime," or animated images, which he

---

[1]Under Section 2252A, it is a crime to knowingly receive or distribute any child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(2). The mandatory minimum sentence for a conviction under Section 2252A is five years and the maximum is twenty years. 18 U.S.C. § 2252A(b)(1). The crime of possession of child pornography, charged in Count II, carries a maximum sentence of ten years for a first offender, with no minimum sentence. 18 U.S.C. § 2252(b)(1).

believed were legal. He also contended that he did not intend to distribute the images. The jury rejected Noe's defenses and found him guilty on both counts. The court accepted the jury's verdict, and ordered the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office"). Filing No. 52, Order on Sentencing Schedule.

In the PSR, the Probation Office calculated the defendant's sentence under the United States Sentencing Guidelines ("the Guidelines"). Filing No. 98, PSR (Sealed) at 5. It based its outline of the offense conduct on the prosecutor's version of events and on conversations with the case agent. *Id.* at 4-6. As part of a Nebraska State Patrol investigation of peer-to-peer networks, law enforcement officers connected with a computer owned by the defendant. *Id.* at 4. A law enforcement officer observed 310 files publicly available for distribution, 12 of those were confirmed as child pornography files. *Id.* at 4. The defendant's home was then searched and his computer, external drives, CDs, DVDs and games were seized. Officers found 36 movie files of child pornography involving children ranging from 6 to 12 years old engaging in sex acts with adults and other minor children, and 21 movie files of children between the ages of 3 to 10 engaged in sexual acts with adults and children on the DVDs. *Id.* at 5-6. One of the videos showed a child of approximately 14 years of age involved in a bondage sexual act with an adult male. *Id.* at 6. Noe also possessed approximately fifty images of anime or cartoon videos depicting very young women being displayed in depictions that would be child pornography if they depicted actual children. *Id.*

The Probation Office determined that U.S.S.G. § 2G2.2(a)(2) provided a base offense level of 22 for the defendant's violation. *Id.* at 8. It found Noe accountable for

12,225 images of child pornography, including 163 videos calculated under the Guidelines as 75 images per video. *Id.* at 8. It also found the following upward adjustments were applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor); a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) (for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain); a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for material that portrays sadistic or masochistic conduct or other images of violence);[2] a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer); and a five-level increase under U.S.S.G. § 2G2.2(b)(7) (for possession of more than 600 images). *Id.* at 7-8. *Id.* at 8. The application of these enhancements resulted in an adjusted offense level of 40. The Probation Office found the defendant was not eligible for an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 40. *Id.* at 9. Noe has no criminal history points and his criminal history category is I. *Id.* At offense level 40 and criminal history category I, his Guidelines range of imprisonment would be 292 to 365 months (roughly twenty-four years to thirty years), but is capped at the statutory maximum sentences of twenty years on Count I and ten years on Count II. The government adopted the findings in the PSR. Filing No. 60.

    Mr. Noe is twenty-seven years old. Filing No. 98, PSR at 10. He has never been married and has no children. *Id.* at 11. The defendant's father was in the military and his family moved often while he was growing up. *Id.* They lived for several years in Japan,

---

[2] The PSR states that the materials contained a video showing penetration of an eleven-year old girl. *Id.* at 6. Under Eighth Circuit caselaw, this conduct qualifies as sadistic conduct." *United States v. Diaz,* 368 F.3d 991, 992 (8th Cir.2004); *United States v. Belflower,* 390 F.3d 560, 562 (8th Cir. 2004) (per curiam) (stating that images depicting an adult penetrating or attempting to penetrate a minor are per se sadistic because "[s]uch images portray conduct sufficient to presume the infliction of mental or physical coercion or abuse upon a minor.").

3

where Noe first developed his interest in anime. *Id.* He is a high school graduate and attended community college for two years. *Id.* at 12. His parents separated approximately four to five years prior to his arrest, and he lived with his parents until one month before his arrest. *Id.*

The defendant stated it was hard for him to make friends while growing up and he was often bullied or beaten up. *Id.* He was placed in resource classes due to his hyperactivity disorder and speech problem. *Id.* He reported that he was diagnosed and treated for Attention Deficit Hyperactivity Disorder when he was approximately ten years old. *Id.* at 11-12. He also reported that he had been diagnosed with Bipolar Disorder, but could not remember specifics. *Id.* at 12. His father confirmed that Noe had been diagnosed with ADHD and Bipolar Disorder, treated with Ritalin and Lithium, and had been hospitalized for two months in the Bethesda Naval Medical Center. *Id.* Noe stated that he has not been involved with a psychologist and has not taken any medications since high school. *Id.*

The court ordered a psychiatric evaluation of the defendant. Filing No. 89. Noe was diagnosed with Adjustment Disorder with Mixed Anxiety and Depressed Mood and Personality Disorder (not otherwise specified) with Schizoid and Schizotypal, Narcissistic and Borderline Features. The examining psychiatrist concluded that there was no information to suggest that the defendant would re-offend or escalate the behavior and Noe was not diagnosed as a pedophile.

Noe objected to the presentence investigation report and moved for a sentence outside the Guidelines range. Filing No. 90. He objected to a number of enhancements and to his total offense level and argued for a deviation or variance from the Guidelines

range under 18 U.S.C. § 3553(a). The court overruled the objections and accepted the PSR.

**II. LAW**

The Sentencing Guidelines are no longer mandatory. *United States v. Booker,* 543 U.S. 220, 260-61 (2005). Consequently, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *Gall v. United States,* 552 U.S. 38, –-, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines to be reasonable); *see also Kimbrough v. United States,* 552 U.S. 85, —, 128 S. Ct. 558, 570 (2007); *Rita v. United States,* 551 U.S. 338, 349-50 (2007); *Cunningham v. California,* 549 U.S. 270, 286-87 (2007). District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246). These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring): *see also Spears v. United States,* — U.S. —, —, 129 S. Ct. 840, 843 (2009) (per curiam) (recognizing that a district court's categorical disagreement with and variance from the Guidelines is not suspect).

In imposing the sentence, the district court must consider the factors set out in 18 U.S.C. § 3553(a).[3] The Sentencing Reform Act "contains an overarching provision

---

[3]Those factors are:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment or the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;

5

instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570. Sentencing courts are charged with considering "the history and characteristics of the defendant" as one of the § 3553(a) factors 18 U.S.C. §§ 3553(a)(1); *see Rita,* --- U.S. ----, 127 S. Ct. at 2473 (Stevens, J., concurring) ("Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines. These are, however, matters that § 3553(a) authorizes the sentencing judge to consider.") (internal citations omitted).

Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at —, 128 S. Ct. at 596-97. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.,* 552 U.S. at —, 128 S. Ct. at 596. If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id.* The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects

---

(4)   the advisory guideline range;
(5)   any pertinent policy statements issued by the Sentencing Commission;
(6)   the need to avoid unwarranted sentence disparities; and
(7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

"the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595.  The court is free to consider whether the guideline sentence itself "fails properly to reflect § 3553(a) considerations" in the case at hand.  *Rita*, 127 S. Ct. at 2465.  The court can also consider whether the guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards."  *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570, 575; *Rita,* 551 U.S. at 349-50.  When operating within that institutional role, the Sentencing Commission "has the capacity courts lack" and can "'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'"  *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007)* (McConnell, J., concurring)).  In formulating the Guidelines, the Commission developed and used data on past practices and recidivism. *See* United States Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing:  An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 72-73 (November 2004), available at http:// www.ussc.gov/ 15_ year/ 15_ year_ study_ full.pdf ("Fifteen-Year Assessment"); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567; *Gall,* 552 U.S. at —, 128 S. Ct. at 594 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Based on these sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range.  Fifteen-Year Assessment at 14.  Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range.  *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574.

When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *See, e.g., Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting Rita*, 551 U.S. at 350); *see also Gall,* 552 U.S. at —, 128 S. Ct. at 594 n.2 (noting that not all Guidelines are tied to empirical evidence). Consequently, the Guidelines that are not based on empirical evidence are a less reliable appraisal of a fair sentence. *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574-75. In such cases, it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 575; *see United States v. O'Connor*, 567 F.3d 395, 398, n.4 (8th Cir. 2009) (assuming without deciding that *Kimbrough's* holding extends beyond the 100-to-1 crack/powder cocaine disparity)

Both for policy reasons and because Congress had enacted mandatory minimum sentences, Commission departed from past practices in setting offense levels for child abuse crimes and sexual offenses. Fifteen-Year Assessment at 15, 72-73; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567. The Guidelines for child exploitation offenses were not developed under the statistical approach, but were promulgated, for the most part, in

response to statutory directives.[4] *See, e.g.,* U.S.S.G. App. C, Vol. I, Amends. 537 & 538 (Nov. 1, 1996); Vol. II, amend. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amend. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Commission, *Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties* (June 1996) ("Sex Offenses Against Children Report"); *see also United States v. Huffstatler,* 571 F.3d 620, 624 (7th Cir. 2009) (noting that "district courts perhaps have the freedom to sentence below the child-pornography guidelines based on disagreement with the guidelines," but are not required to do so); *see also* Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*, July 3, 2008, available at http://mow.fd.org/index.shtm (unpublished Comment, last visited November 2, 2009). For example, in 1991, over the objection of the Sentencing Commission, Congress, reacting to the erroneous perception that the Sentencing Commission had lowered the penalties for child pornography crimes, explicitly directed the Commission to

---

[4]Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children. *See, e.g.,* the Protection of Children Against Sexual Exploitation Act of 1977, *codified as amended* at 18 U.S.C. §§ 2251-2253 (targeting the commercial production of visual or print depictions involving minors engaged in sexually explicit conduct); the Child Protection Act of 1984, *codified as amended* at 18 U.S.C. § 2253 (raising the age of a child for purposes of defining child pornography from sixteen to eighteen); the Child Protection and Obscenity Enforcement Act of 1988, *codified as amended* at 18 U.S.C. §§ 2251 & 2252(a) (criminalizing the use of computers to transport, distribute, or receive visual depictions involving minors and prohibiting the knowing interstate transportation and receipt of visual depictions of sexually explicit conduct involving a minor); the Sex Crimes Against Children Act of 1995, *codified as amended* at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, *codified as amended* at 18 U.S.C. § 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), *invalidated as unconstitutional* in *Ashcroft v. Free Speech Coal.,* 535 U.S. 234 (2002), & 2252A (punishing, among other activities, anyone who "knowingly possesses any . . . material that contains an image of child pornography that has been mailed . . . in interstate or foreign commerce by any means, including by computer"); the Protection of Children from Sexual Predators Act of 1998, *codified as amended* at 18 U.S.C. § 2426 (increasing punishment for persons who misrepresent themselves as minors or use computers or Internet access devices to locate and gain access to minors and for repeat offenders); the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), *codified as amended* at 18 U.S.C. § 2252B (making it a criminal offense to use "a misleading domain name on the Internet with the intent to deceive a person into viewing obscenity or material constituting obscenity").

9

alter the Guidelines to correspond to its perception of the Crime Control Act of 1990. *See Proceedings and Debates of the 102nd Congress, First Session,* 137 Cong. Rec. H6736-02, H6736, H6741, 1991 WL 187764, *H6737, *H6741 (Cong. Rec.) (1991). Congress rejected the Sentencing Commission's advice and in doing so, abandoned the studied "empirical" approach to sentencing with respect to child pornography crimes. *See id.* at H6738 (Correspondence to Congressman Edward R. Roybal from Sentencing Commission Chairman William Wilkins). Congress explicitly directed the Sentencing Commission to, among other things, increase the base offense level for child pornography crimes; to include "receiving" pornography in the Guidelines section that governed trafficking and transporting; to increase the base offense level for receiving, transporting, and trafficking from 13 to 15; to add enhancements for the number of items possessed; and to add an enhancement for patterns of activity involving the sexual abuse or exploitation of a minor. *Id.* at H6741.

In 1995, Congress again directed the Commission to increase penalties for child pornography and other sex crimes against children. *See* U.S.S.G. App. C., Vol. I, Amends. 537 & 538 (November 1996) (implementing the Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774 (1995) (enacted); 141 Cong. Rec. H4122-01, 1995 WL 143978 (1995)).

The Sentencing Commission carried out that directive by increasing the base offense levels for producing, trafficking, and possessing child pornography by two levels and adding a two-level enhancement for use of a computer. *See* Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 61 Fed. Reg. 20,306, 20,307-08, 1996 WL 223875 (F.R.) (May 6, 1996) (to be codified at U.S.S.G. §§ 2G2.1, 2G2.2,

2G2.4). The Commission also clarified and broadened the definition of the "pattern of activity" enhancement to apply to conduct unrelated to the offense of conviction in order to "increase the sentences for the most dangerous offenders." Sex Offenses Against Children Report at i; *see* U.S.S.G. App C, Vol. I, amend. 537.

Congress also directed the Sentencing Commission to prepare a report and analysis of sex offenses against children and child pornography for submission to Congress. Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774, 775 (1995) (enacted). In its report to Congress, the Sentencing Commission noted that "[i]t appears that a significant portion of child pornography offenders have a criminal history that involves the sexual abuse and exploitation of children" and recommended that Congress increase statutory maximum sentences for production of child pornography and double the statutory maximum for offenders with prior convictions for sex abuse crimes. Sex Offenses Against Children Report, Executive Summary at ii. The amendments and recommendations were intended to "ensure lengthy incarceration of repeat sex offenders who show the greatest risk of victimizing children." *Id*. at i. The Sentencing Commission, however, acknowledged that federal prosecutions for child sex offenses represented a small percentage of the total number of such cases nationwide, because the vast majority of sex offenses were prosecuted in state court. *Id*. The Commission stated that "[p]enalties for sex offenses against children have been increased in recent years and are quite severe," but noted that amendment may "be appropriate to increase sentences for the most dangerous offenders." *Id.*

Congress then responded to the Commission's report with legislation increasing penalties for child pornography, exploitation and abuse. Protection of Children from Sexual

Predators Act of 1998, Pub. L. No. 105-314, 1998 H.R. 3494, 105th Cong., 112 Stat. 2974 (1998) (enacted). It directed the Commission to increase penalties and add enhancements and to clarify that distribution included distribution for nonpecuniary gain. *Id.,* 112 Stat. at 2980-82. The Sentencing Commission afforded expansive coverage to the meaning of distribution in U.S.S.G. § 2G2.2(b)(3)(A)-(F) and added several enhancements depending on the purpose and audience for the distribution. U.S.S.G. App. C, Vol. II, amend. 592 (Nov. 1, 2000).

In 2003, Congress enacted the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (the "PROTECT Act"), which established a five-year mandatory minimum sentence for trafficking/receipt offenses, increased the statutory maximum for possession offenses from five to ten years, and increased the statutory maximum from 15 to 20 years for trafficking/receipt offenses. 18 U.S.C. §§ 2252(a)(1)-(3) and 18 U.S.C. § 2252A(a)(1) - (4) and (6) *and see* PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 653 (2003) (enacted); U.S.S.G. App. C, Vol. II, amend. 649 (April 30, 2003). Congress also issued further directives to the Sentencing Commission. *See* U.S.S.G. App. C, Supp. Vol., amend. 649 (Apr. 30, 2003), 664 (Nov. 1, 2004). To conform to the new mandatory minimum sentences and higher statutory maxima, the Sentencing Commission raised base offense levels for trafficking/receipt offenses from 18 to 22 and base offense levels for possession from 15 to 18. *Id.* The Commission also added several enhancements for specific offense characteristics and significant enhancements for the number of images. *See id.* It noted that enhancements for use of a computer and number of images would be applicable in every case, thus

ensuring that the Guideline sentences would approximate the statutory mandatory minimum sentences. *Id.*

The text and structure of the criminal child pornography statutes prohibit conduct across a spectrum of activity ranging from merely possessing child pornography to "mailing, transporting or shipping child pornography" to "knowingly receiving or distributing child pornography" to "knowingly reproducing, advertising, promoting, presenting or distributing" child pornography to "knowingly selling or possessing with intent to sell" child pornography. 18 U.S.C. § 2252A(a)(1)-(4). The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils. *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251. In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity." U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000). The primary victims of the crime of possession of pornography are the exploited children. *See* [United States v. Rugh, 968 F.2d 750, 756 (8th Cir. 1992)](#).

### III. ANALYSIS

#### A. Guideline Calculation

The court adopts the findings in the PSR. The defendant's base offense level under the Guidelines is 22. See U.S.S.G. § 2G2.2(a)(1). The court finds the following

adjustments are applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) for possession of material containing a prepubescent minor; a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain; a four-level increase under U.S.S.G. § 2G2.2(b)(4) for material that portrays sadistic or masochistic conduct or other images of violence; a two-level increase under U.S.S.G. § 2G2.2(b)(6) for use of a computer; and a five-level increase under U.S.S.G. § 2G2.2(b)(7) for possession of more than 600 images. The application of these enhancements results in an adjusted offense level of 40, and a recommended sentencing range of 292 to 365 months at criminal history category I. The court finds an adjustment for acceptance of responsibility is not warranted. The defendant's advisory Guidelines term of imprisonment is limited by the statutory maximum of 240 months on Count I and 120 months on count II.

### B.  Section 3553 Factors

The defendant's motion for a deviation or variance from the Guidelines is granted. The court finds a sentence outside the Guidelines is warranted in this case. The court finds that the defendant should be sentenced to a period of incarceration of 84 months on Count I and 84 months on Count II, to be served concurrently, followed by concurrent terms of supervised release of five years on each count. This sentence fulfills the objectives of sentencing set out in Section 3553(a).

With respect to the nature and circumstances of the offense, the court first finds possession and distribution of child pornography are serious offenses. Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or pornography production, as well as trafficking in pornography.

Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children. Nevertheless, the defendant's actions fall near the low end of the continuum of criminal conduct—from possession to distribution to production to predatory abuse—that exploits children. A possessor of child pornography is the least culpable in the chain and is a marginal player in the overall child exploitation scheme. Similarly, there are varying levels of participation and blameworthiness with respect to distribution. Although file-sharing arrangements help facilitate Internet trafficking in child pornography, there is a qualitative difference between sharing one's computer files and selling child pornography for profit. It is clear that the statutes criminalizing possession and distribution of child pornography are aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters.

The Guidelines sentencing scheme for child pornography crimes illogically skews sentences for "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between least and worst offenders.[5] In the context of this and most Internet child pornography crimes that involve peer-to-peer networks, there is little principled distinction in levels of culpability for possession as opposed to distribution and for levels of blameworthiness between low-level and high-level distributors. The nature of peer-to-peer file sharing programs mean that most possessory

---

[5]In this case, the application of enhancements inordinately increases Noe's Guidelines range of imprisonment. The Guideline enhancements raise his offense level from 22 to 40. Offense levels of 40 or above are generally reserved for only the most serious of offenses and the most dangerous of offenders. The defendant does not belong in that category.

15

crimes evolve into distribution once someone accesses a shared file. The increased dangers and harms that make distribution a more serious crime than possession are accounted for in the statutory scheme by the mandatory minimum sentence in Section 2252A. In this case, a fairly typical offender with no criminal history finds himself with a recommended Guideline range that greatly exceeds the statutory maximum.

Noe is subject to enhancements for use of a computer and for number and type of images that apply in virtually every case. The Internet has become the typical means of obtaining child pornography, and Internet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court. The enhancements for use of a computer and number of images lack value as a reliable proxy for culpability and are a poor gauge of relative levels of fault between offenders. Similarly, in this type of distribution scheme, the number of images does not provide the distinction between a large-scale and a small-scale child pornography purveyor that Congress and the Sentencing Commission envisioned when promulgating its market-based and quantity-driven scheme. The number of images is meaningless as an indicator of a defendant's position in a distribution hierarchy. The nexus between the number of images and a defendant's culpability is further attenuated by the unfortunate ease with which large numbers of images can be accessed and obtained. Whatever connection there may be between a defendant's relative guilt and the number of images, a five-level increase overstates that connection.

Moreover, an enhancement for possession of sadistic and masochistic images will apply whether or not a defendant specifically intends to possess such material and is thus another inadequate measure of culpability. As broadly defined in the Eighth Circuit, the

four-level enhancement for portrayal of sadistic or masochistic conduct or images of violence applies in many, if not most, cases.

The court has consulted the Guidelines and has used the Guidelines calculation as its initial starting point. However, in view of the fact that the child pornography Guidelines are driven by Congressional directive, rather than grounded in any scientific, statistical, or empirical method, the advice imparted in the Guidelines is outside the Sentencing Commission's area of expertise and need not be accorded a high degree of deference by the court. The Sentencing Commission diverged significantly from its studied, empirical approach in formulating these Guidelines and produced a sentence greater than necessary to provide just punishment in many cases. The court finds that the Guidelines ranges may be appropriate for a sexual predator, but they are not a reliable appraisal of a fair sentence in this case.

There is no evidence that Noe has ever been involved in production or wide-spread dissemination of child pornography for profit. He is a low-level consumer and somewhat inadvertent distributor of child pornography whose sentence should fall closer to the low end of the statutory range than to the maximum. The sentence recommended under the Guidelines, after the imposition of numerous and extreme enhancements for circumstances that appear in nearly every child pornography case—using the Internet, amassing numerous images (including video clips counted as 75 images each), images of prepubescent minors and violence, and some "distributing" in return for other images—is greater than necessary to protect the public and deter the defendant from re-offending. To the extent that harsh punishment is necessary to deter harm to children, punishing a

less-culpable offender as harshly as the worst does not satisfy the goals of sentencing and encourages disrespect for the law.

The court has also considered the defendant's history and characteristics. The defendant is a young man with serious mental health problems. He was bullied as a youth. He lived at home with his parents until shortly before he was arrested. There is no allegation that he ever abused or attempted to abuse a child or acted inappropriately toward a child. He has no criminal record and no history of drug or alcohol abuse. It is clear to the court that Noe has serious psychiatric issues. Dr. Gutnik's evaluation is supported by generally accepted psychiatric techniques and his diagnosis is reasonable. Based on the court's review of the record, it appears that the defendant's mental health problems contributed to actions and played into the voyeurism and criminal conduct presented in this case. The evidence does not suggest that the defendant's conduct is predictive of any future sexual offenses.

At trial, Noe acknowledged that he possessed child pornography but contended that he intended only to possess anime, which he thought was legal. The court finds that there was substantial evidence on which the jury could rely in rejecting Noe's defenses. The defendant has accumulated a considerable amount of child pornography and violent images, the nature of which is highly disturbing. Mr. Noe's conduct is clearly illegal, whether he deluded himself into believing it was legal or not.

The court has also considered the need to avoid sentencing disparities. The history of legislative enactments in this area reflects Congressional concern with the use of computers to lure or entice children into sex acts. Possession of child pornography was criminalized in part because of concerns that the Internet facilitated access to and

enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims. This case does not involve such conduct and there is nothing to indicate that the defendant is likely to engage in such conduct in the future. Legislative history also shows Congress' concern with dangerous child abusers and repeat offenders. Enhancements of increasing severity for quantity and for recidivism are aimed at the most dangerous of child pornography offenders. Again, Noe does not fall within that class. There is no evidence that he has abused, or is likely to abuse, children. The evidence establishes that Noe is not likely to commit further crimes. His lack of criminal history and low risk of reoffending suggests that a sentence near the mandatory minimum is likely to afford adequate punishment and deterrence. The court finds that an outside-the-Guidelines sentence will respect the distinction between the defendant's culpability and the far greater culpability of an actual predator or abuser. The sentence of a purveyor or small-time distributor of child pornography should be proportional to and significantly lower than a sentence for an exploitative crime that involves acts of abuse by a defendant.

A slightly longer sentence than the mandatory minimum sentence, but considerably shorter than the Guidelines calculation, is appropriate. The court finds that concurrent sentences of eighty-four months on each count will provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. Seven years is a significant term of imprisonment for a first offender. The public will be adequately protected by a term of supervised release with strict conditions and by the provision of sex offender treatment to the defendant. The mere fact of Noe's prosecution and conviction will deter others from engaging in this sort of conduct.

The deterrent value of any longer sentence would be marginal. Given that the benefit to society of a longer period of incarceration would be negligible, any benefit is outweighed by the potential harm a longer sentence would have on Noe's ability to return to society as a productive citizen.

A Judgment and Commitment and Statement of Reasons in accordance with this Sentencing Memorandum will issue this date.

DATED this 13th day of November, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.